IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ROYCE D. SHYE, | ) |
| | ) |
| PLAINTIFF, | ) No. 2:14-cv-00025 |
| | ) Judge Sharp/Bryant |
| v. | ) |
| | ) |
| W.B. MELTON, SHANNON HARVEY, | ) |
| and PATRICIA HENSLEY, | ) |
| | ) |
| DEFENDANTS. | ) |

**To: The Honorable Chief Judge Kevin H. Sharp, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 30) be **GRANTED**. The Magistrate Judge finds that Plaintiff has failed to produce evidence to show that there is any genuine dispute of material fact for trial. Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** with prejudice.

### I. Statement of the Case

Plaintiff, proceeding *pro se* and *in forma pauperis*, is now an inmate at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee and at all times relevant to the Complaint was an inmate at Overton County Justice Center (OCJC) in Livingston, Tennessee. (Docket Entry 1 and 25). On February 28, 2014, Plaintiff filed his Complaint alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entry 1). On March 17, 2014, the District Judge referred this case to the Magistrate Judge. (Docket Entry 3). On November 18, 2014, Defendants filed the instant Motion along with a Memorandum of Law in Support, a statement of

undisputed facts, and various supportive exhibits. (Docket Entry 30; 32-35). Defendants argue that they are entitled to summary judgment because Plaintiff "has not come forward with sufficient proof to establish that he has suffered the deprivation of any [C]onstitutional right." (Docket Entry 32, p. 2). They also raise a bevy of other defenses and arguments, including failure to allege an injury, failure to exhaust administrative remedies, and qualified immunity. (Docket Entry 32). Plaintiff has not filed a response and the time to do so has passed pursuant to the Scheduling Order. (Docket Entry 11). Therefore, the matter is now properly before the Court.

## II. Standard of Review

### A. 42 U.S.C. § 1983

A plaintiff who brings a § 1983 claim "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citation omitted).

### A. Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (FED. R. CIV. P.), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court must "decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Anderson,* 477 U.S. at 251–52).

"The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case." *Adams v. Rockafellow,* 66 F. App'x 584, 585 (6th Cir. 2003) (unpublished opinion) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Adams,* 66 F. App'x at 585 (citing *Anderson,* 477 U.S. at 248-49; *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993)). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

If the nonmoving party fails to meet its burden, the Court may rely on the facts advanced by the moving party. *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). However, the Court may not grant a motion for summary judgment simply because a nonmoving party fails to respond. *Miller v. Shore Fin. Servs., Inc.,* 141 F. App'x 417, 419 (6th Cir. 2005) (unpublished opinion). Instead, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller,* 141 F. App'x at 419 (citation omitted).

When a plaintiff is *pro se*, the Court will review the plaintiff's pleadings under "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, "even *pro se* complaints must satisfy basic pleading requirements." *Dallas v. Holmes*, 137 F. App'x 746, 750 (6th Cir. 2005) (unpublished opinion) (citation omitted).

### III. Summary of Allegations

Plaintiff identifies Defendant Melton as Sheriff Melton, Defendant Harvey as the OCJC Jail Administrator, and Defendant Hensley as a corrections officer at the OCJC. (Docket Entry 1, pp. 1-2).

First, Plaintiff alleges that he is "being house[d] in an unsafe environment . . . due to the intercom system not working." (Docket Entry 1, p. 7). Second, Plaintiff alleges that there are "unsanitary conditions and practices in the food preparation and serving at the [OCJC]." (Docket Entry 1, p. 7). He alleges that staff members do not wear hair nets or gloves. (Docket Entry 1, p. 7). Third, Plaintiff alleges that he has "documented proof of a consistent pattern of being denied . . . recreation time by the staff and administration of the [OCJC]." (Docket Entry 1, p. 7). As such, he alleges that "protective custody inmates are in fact being shown indifference in their treatment . . . ." (Docket Entry 1, p. 7).

Fourth, Plaintiff broadly alleges that he is "being denied access to current events, weather, and news as well as religious services and spiritual advisors." (Docket Entry 1, p. 8). The Magistrate Judge reads this as consisting of two distinct claims. As one claim, Plaintiff alleges that he has "been denied the right to practice [his] religion . . . [because] they will not allow pastors nor spiritual advisors to come into the maximum security pod." (Docket Entry 1, p. 8). Separately, Plaintiff alleges that he has been denied a television which "is cruelty on the part of the administration and staff." (Docket Entry 1, p. 8).

Fifth, Plaintiff alleges that Defendant Hensley has "harassed and targeted" him for being a protective custody inmate and for being African American. (Docket Entry 1, p. 9). He alleges that Defendant Hensley "has been allowed to both verbally and physically assault inmates," that she is an "untrained employee," and that she "continues to show a consistent pattern of indifference towards [Plaintiff] and [his] cellmate." (Docket Entry 1, p. 9).

Sixth, Plaintiff alleges that he is "being exposed to hazardous materials and fumes without proper ventilation." (Docket Entry 1, p. 10). He alleges that on February 24, 2014, maintenance work in the maximum security pod "released hazardous materials into the entire pod followed by painting that released hazardous fumes." (Docket Entry 1, p. 10). He alleges that he suffered a headache and became light headed and that the work "caused an unsafe and unsanitary condition to the entire max[imum] [security] population . . . ." (Docket Entry 1, p. 10).

Finally, Plaintiff alleges that he should be sent to a TDOC facility. (Docket Entry 1, p. 11). He alleges that the OCJC is keeping him "trapped . . . in order to fleece the state of Tennessee out of its state funds by pretending that [Plaintiff] has not done the necessary procedures to go to a state run correctional facility." (Docket Entry 1, p. 11). He argues that it is "cruel and unusual punishment . . . [to be] denied access to the rehabilitative programs offered by the TDOC state run correctional facilities." (Docket Entry 1, p. 11).

### IV. Analysis

As a threshold matter, Plaintiff has not requested class certification and lacks standing to raise any claims which pertain to the rights or injuries of other inmates. *Newsom v. Norris,* 888 F.2d 371, 381 (6th Cir. 1989). As to the remaining claims, Plaintiff brings this action against Defendants in their personal and official capacities.

"Personal-capacity suits[1] seek to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an

---

1 The Magistrate Judge notes that "personal capacity" is used synonymously throughout the case law with "individual capacity." *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").

agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citation and internal quotation omitted).

When a claim is against a defendant in his personal capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166 (citation omitted). Still, a plaintiff must plead facts to show that the defendant was personally involved in the alleged deprivation. *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) (unpublished opinion). When a plaintiff brings a § 1983 personal capacity claim against a defendant who had a supervisory role, "respondeat superior" will not apply to "impute liability" onto such a defendant unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Sarr v. Martin*, 53 F. App'x 760, 762 (6th Cir. 2002) (unpublished opinion) (citation and internal quotation omitted).

When a claim is against a defendant in his official capacity, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky*, 473 U.S. at 166 (citation omitted). "Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) (citation omitted). In the absence of an official policy, the Court still considers whether Plaintiff shows "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168 (1970)).

Again, "local governments are responsible only for 'their *own* illegal acts' . . . not vicariously liable under § 1983 for their employees' actions." *Connick*, 131 S. Ct. at 1359

(citation omitted). Still, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. To that end, a plaintiff must show "deliberate indifference" on the part of the official. *Connick*, 131 S. Ct. at 1360. This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (citation omitted).

### i. Personal Capacity Claim

Here, the Magistrate Judge is unable to find a single instance where Plaintiff mentions Defendant Melton or Defendant Harvey. As to Defendant Hensley, Plaintiff mentions her in one of his seven claims and then fails to state a Constitutional claim as discussed below.[2] (Docket Entry 1, p. 9). In his other six claims, Plaintiff fails to mention any named defendant and instead makes general references to "the staff," "the administration," and "the [OCJC]."(Docket Entry 1, pp. 7, 8, 11). The Magistrate Judge is unable to infer that these references are actually to the named Defendants herein. Even if the Magistrate Judge were able to infer as such, he would still be unable to determine which Defendant Plaintiff meant to implicate in each claim.

Therefore, the Magistrate Judge finds that Defendants show a lack of any genuinely disputed material fact regarding the named Defendants' personal involvement.

### ii. Official Capacity Claim

Here, Plaintiff refers mostly to isolated events such as an inoperable intercom system and television, a hair in his food, and provisional maintenance work, none of which constitutes a policy or custom claim. He also alleges that he is "consistently" denied recreation time; that the OCJC prohibits pastors in the maximum security pod; and that he is trapped in the OCJC.

---

2 *See infra* Part.IV.iii.

Broadly construing these claims, the Magistrate Judge infers that Plaintiff means to allege that there is a policy or custom at the OCJC that violates his rights. However, no reasonable jury could find as such based on the evidence before the Court. Instead, Defendants establish the following undisputed facts which preclude a finding of a policy or custom of indifference at the OCJC: after Defendant Harvey learned that recreation time was cut short by thirty minutes on one occasion, this was corrected and did not occur again; Plaintiff never requested time with a minister; the OCJC is not an overcrowded facility and, as such, receives lower priority for transfers to state prison than overcrowded facilities in other counties. (Docket Entry 32, pp. 8-9; 27-28; Docket Entry 34, pp. 3-14; Entry 35, pp. 5-9).

To the extent that Plaintiff's Complaint includes a claim of failure to train, this claim fails. Plaintiff alleges that Defendant Hensley is an "untrained employee." (Docket Entry 1, p. 9). However, in order for a failure to train claim to rise to the level of a policy concern, Plaintiff must show "deliberate indifference" of an official. *Connick*, 131 S. Ct. at 1360. The undisputed facts show no such indifference. Instead, the undisputed facts show that Defendant Hensley reprimanded Plaintiff for excessively running water in his cell and took pictures of a shampoo bottle that Plaintiff had propped in the sink to keep the water running. (Docket Entry 34, pp. 6-7). Moreover, Defendant Harvey independently investigated the actions of Defendant Hensley and found that Defendant Hensley was not harassing the inmates. (Docket Entry 34, pp. 8-10).

Therefore, the Magistrate Judge finds that Defendants show a lack of any genuinely disputed material fact regarding an official policy or a custom at the OCJC.

### iii. Unnamed Defendants and Constitutional Merits

Plaintiff's claims should also be dismissed due to an absence of evidence that would show how the claims amount a constitutional deprivation. This finding extends to the unnamed

parties as well. Under FED. R. CIV. P. 10(a), a plaintiff must "name all the parties." However, Plaintiff repeatedly refers to "the staff" or "the administration." (Docket Entry 1, pp. 7, 8, 11). The Magistrate Judge denied Plaintiff's sole "Motion for Evidentiary Discovery" for failure to comply with Local Rules, and Plaintiff did not file another discovery motion or amend his Complaint to establish the identity of the unnamed parties. (Docket Entry 27). The Magistrate Judge could recommend dismissal without prejudice as to the unnamed parties under FED. R. CIV. P. 4(m). However, the Magistrate Judge finds this unnecessary in light of the following analysis and, instead, recommends dismissal with prejudice.

The Magistrate Judge construes several claims to be claims under the Eighth Amendment by which "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and internal quotation omitted). A prison official will be deemed to have violated the Eighth Amendment when his action meets both an "objective" and a "subjective" requirement. *Farmer*, 511 U.S. at 834. "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 681 (6th Cir. 2013) (citation and internal quotation omitted). "In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834 (citation omitted). Moreover, "conditions of confinement . . . [may] constitute[] cruel and unusual punishment . . . [if] they result[] in unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Serious deprivations "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Here, Plaintiff's claim that he is "house[d] in an unsafe environment" because of a malfunctioning intercom system fails under the Eighth Amendment. The undisputed evidence shows that Plaintiff suffered no deprivation and that prison officials were not deliberately indifferent to his safety. Instead, Plaintiff concedes that he never needed to call the guards. (Docket Entry 33-1, p. 5). Moreover, he was housed in maximum security for his own protection. (Docket Entry 34, p. 2).

Plaintiff's claim about the OCJC kitchen conditions also fails. The Sixth Circuit considered the case of a worm in a prisoner's peanut butter and affirmed the District Court's dismissal of the claim. *See Smith v. Younger,* 187 F.3d 638, at *2 (6th Cir. 1999) (unpublished opinion). The Court noted that "[t]he fact that the [prison] food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith,* 187 F.3d 638, at *2 (citation omitted). In his deposition, Plaintiff testifies that he found a hair in his food once. (Docket Entry 33-1, p. 6). Like a worm in one's peanut butter, although unpleasant, an isolated incidence of hair in prison food does not amount to a Constitutional violation.

Plaintiff's claims about lack of recreation time and lack of a television also fail. The undisputed evidence shows that Plaintiff may have been denied thirty minutes of recreation time, once, after which Defendant Harvey corrected the problem and it did not reoccur. (Docket Entry 35, pp. 8-9). The undisputed evidence also shows that Plaintiff did have access to a television until other inmates broke the plug. (Docket Entry 35, p. 11). The Magistrate Judge finds that a single incidence of reduced recreation time is not "sufficiently severe" to constitute a violation. Moreover, a television is far from a necessity of life.

Plaintiff's allegation against Defendant Hensley also fails. In Plaintiff's deposition, he testified that Defendant Hensley "always seemed to have some kind of problem or attitude." (Docket Entry 33-1, p. 12). He alleges that Defendant Hensley became "verbally abusive" when Plaintiff did not move quickly enough while turning his sheets in to be washed. (Docket Entry 33-1, pp. 12, 15). He alleges that Defendant Hensley referred to him as a sex offender and that she confronted Plaintiff about running the water in his cell in a wasteful manner. (Docket Entry 33-1, pp. 12-13). However, even viewing these allegations in favor of Plaintiff, "harassment and verbal abuse, . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa,* 357 F.3d 539, 546 (6th Cir. 2004) (citation omitted).

Plaintiff's allegation about being exposed to hazardous fumes also fails. Plaintiff offers nothing beyond conclusory allegations that the maintenance work involved hazardous fumes or paint. Moreover, the undisputed evidence precludes a finding that prison officials were deliberately indifferent to the risk of hazardous fumes. Instead, during maintenance work at the OCJC, "[j]ail personnel opened the doors and used fans to blow the fumes out to the recreation yard. When a particular cell was being prepped and painted, the inmates housed in that cell were moved to another cell until it was completed." (Docket Entry 35, p. 9).

Plaintiff's claim that he is denied access to rehabilitative programs at TDOC state facilities fails under the Eighth and Fourteenth Amendments. The law is clear that there is no Constitutional right to incarceration in a particular facility or to participation in a rehabilitative program. *Moody v. Daggett,* 429 U.S. 78, 88, n. 9, 97(1976); *Grimmett v. Wilson Cnty. Jail*, No. 3:15-CV-00116, 2015 WL 787228, at *2 (M.D. Tenn. Feb. 24, 2015).

Finally, Plaintiff's allegation that he was unable to practice his religion because pastors and spiritual advisors may not enter the maximum security pod also fails. The undisputed

evidence shows that although prisoners in protective custody "cannot be ministered with the other inmates . . . the inmates can sign up for individual ministry twice a month." (Docket Entry 32, p. 21; Docket Entry 35, p. 10). Plaintiff concedes that he never requested these services because he was discouraged at another inmate's purported difficulty in seeing a minister. (Docket Entry 33-1, p. 3). As such, Plaintiff fails to state that he suffered a deprivation of his First Amendment rights.

      Therefore, the Magistrate Judge finds that Defendants are entitled to summary judgment because they have established an absence of evidence to support Plaintiff's claims. As such, the Magistrate Judge need not reach Defendants' alternative arguments.

## V.     Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 30) be **GRANTED**. The Magistrate Judge finds that, based upon undisputed evidence, Plaintiff has failed to produce evidence to show any genuine dispute of material fact for trial. Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** with prejudice.

Under FED. R. CIV. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein.  A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 30th day of April, 2015

s/John S. Bryant_____
John S. Bryant
U.S. Magistrate Judge
